# ALEXANDER APPELLATE LAW P.A.
120 S Woodland Blvd Suite 200
DeLand FL 32720

January 29, 2025

Office of the Clerk
United States Court of Appeals for the Seventh Circuit
Everett McKinley Dirksen United States Courthouse
219 S. Dearborn Street
Room 2722
Chicago, IL 60604

      Re:    *Kellie Wilson v. AIM Specialty Health*, Appeal No. 23-3418, scheduled for oral argument on February 4, 2025.

Dear Clerk:

Pursuant to Rule 28(j), Appellant identifies the following supplemental authority: *Vichio v. US Foods, Inc.*, 88 F.4th 687 (7th Cir. 2023). *Vichio* is relevant in two ways.

    First, *Vichio* supports Ms. Wilson's factual argument that pretext should've been a jury question. In *Vichio*, an ADA claim, a warehouse supervisor (age 54) received strong performance reviews for years under his boss, Delhaye. *Id.* at 689. But then, a younger supervisor named Zadlo became plaintiff's boss. Under Zadlo's reign, plaintiff suddenly (i) received negative performance reviews, which the old boss disagreed with (ii) was placed on a PIP, and (iii) was fired within 9 months. *Id.* That plaintiff's career suddenly tanked under Zadlo after flourishing under Delhaye was strong evidence that the negative evaluations were unreasonable and pretextual - sufficient to create a jury question.

    Here, Wilson languished under Opasinski (white), but then immediately began flourishing under Snow (black). As briefed, this sudden change from languishing to flourishing shows that Opasinski's negative evaluations of Wilson were not reasonable – they were pretextual such that pretext was a jury question under either *Ortiz* or *McDonnell Douglas*. IB 27-28 (concluding reasons #4-5 why pretext was a jury question: "It is unreasonable to conclude that, after languishing as an employee for nearly a decade, Ms. Wilson immaculately became an employee worthy of praise and promotion under Snow."); RB 8-9 (arguing that, under *Ortiz* must be considered in gestalt, and Wilson flourishing under Snow after languishing under Opasinski establishes pretext).

    Second, *Vichio* shows that where an employer raises performance issues to justify an adverse employment action, the court "need not consider" the plaintiff's prima facie case under *McDonnell Douglas*. *Vichio*, 888 F.4th at 691. Instead, it can "skip" that step and move straight to pretext. *Vichio*, 888 F.4th at 691 (quotations omitted).

    Here, AIM justified its adverse employment actions based on Wilson's inadequate performance. AB 23-25, 26-28. Because satisfactory performance and pretext overlap, this

1

Court can simply skip to the pretext inquiry. On pretext, evidence must be considered as a whole. *See* RB 8-9 (arguing that, under *Ortiz* must be considered in gestalt).

        Respectfully,

        /s/ Michael Ellis
        Michael Ellis
        (850) 508-2668
        michael@alexanderappeals.com

cc:    Mona Smith        < mlsmith@seyfarth.com >
       Christopher DeGroff    <CDeGroff@seyfarth.com>
       Erin Dougherty Foley    <edfoley@seyfarth.com>

88 F.4th 687
United States Court of Appeals, Seventh Circuit.

Nicholas VICHIO, Plaintiff-Appellant,
v.
US FOODS, INC., Defendant-Appellee.

No. 22-1180
|
Argued October 31, 2022
|
Decided December 15, 2023

**Synopsis**
**Background:** Supervisory employee brought action against employer, alleging violation of Age Discrimination in Employment Act (ADEA) after employee was placed on performance improvement plan and then terminated. The United States District Court for the Northern District of Illinois, Robert W. Gettleman, J., 2022 WL 45028, granted summary judgment to employer. Employee appealed.

**[Holding:]** The Court of Appeals, Jackson-Akiwumi, Circuit Judge, held that genuine dispute of material fact as to whether employer's proffered reason for termination of employee, namely deficient performance, was pretext for age discrimination precluded summary judgment.

Reversed and remanded.

**Procedural Posture(s):** On Appeal; Motion for Summary Judgment.

West Headnotes (13)

[1] **Federal Courts** ← Summary judgment

On appeal of grant of summary judgment, Court of Appeals construes the record in the light most favorable to the non-movant.

[2] **Summary Judgment** ← Employment Practices; Discrimination

At summary judgment in an ADEA action, court asks whether a reasonable jury could conclude employee's age was the cause of his termination. Age Discrimination in Employment Act of 1967 § 7, 29 U.S.C.A. § 626(c).

1 Case that cites this headnote

[3] **Civil Rights** ← Age discrimination

Plaintiffs can rely on two frameworks to show age discrimination in violation of ADEA: the holistic approach, in which court looks at evidence in aggregate to determine whether it allows an inference of prohibited discrimination, or the *McDonnell Douglas* burden-shifting framework. Age Discrimination in Employment Act of 1967 § 7, 29 U.S.C.A. § 626(c).

4 Cases that cite this headnote

[4] **Civil Rights** ← Age discrimination
**Civil Rights** ← Age discrimination

Under the burden-shifting framework of *McDonnell Douglas*, a plaintiff in an ADEA action must first establish a prima facie case for age discrimination; this requires, in part, evidence that the plaintiff was meeting the employer's performance expectations, and the burden then shifts to the employer to present a legitimate, non-discriminatory reason for the employment decision. Age Discrimination in Employment Act of 1967 § 7, 29 U.S.C.A. § 626(c).

9 Cases that cite this headnote

[5] **Civil Rights** ← Age discrimination

Under *McDonnell Douglas* framework for ADEA action, once burden shifts to employer, if the employer presents a legitimate reason for the employment decision at issue, the burden shifts back to the employee to show the proffered reason is a pretext for age discrimination. Age Discrimination in Employment Act of 1967 § 7, 29 U.S.C.A. § 626(c).

1 Case that cites this headnote

[6]  Civil Rights    Age discrimination

Under *McDonnell Douglas* framework for claim of age discrimination under ADEA, defense bears the burden of articulating the justification, but the plaintiff bears the burden of showing that the justification is a pretext. Age Discrimination in Employment Act of 1967 § 7, 29 U.S.C.A. § 626(c).

1 Case that cites this headnote

[7]  Civil Rights    Age discrimination

In analysis of age-discrimination claim under ADEA using *McDonnell Douglas* framework, court may skip the prima facie analysis if employer raises employee's performance as reason for adverse employment decision; in such a case, issues of satisfactory performance and pretext overlap, allowing court to proceed directly to pretext. Age Discrimination in Employment Act of 1967 § 7, 29 U.S.C.A. § 626(c).

7 Cases that cite this headnote

[8]  Civil Rights    Motive or intent; pretext

Pretext in employer's reason for employment decision, as could support employee's age-discrimination claim under ADEA, does not require that plausible facts presented by employer not be true, only that they not be reason for employment decision. Age Discrimination in Employment Act of 1967 § 7, 29 U.S.C.A. § 626(c).

3 Cases that cite this headnote

[9]  Civil Rights    Questions of law or fact
Summary Judgment    Employment Practices; Discrimination

Genuine dispute of material fact as to whether employer's proffered reason for termination of 54-year-old supervisory employee, namely deficient performance, was pretext for age discrimination precluded summary judgment on employee's ADEA claim. Age Discrimination in Employment Act of 1967 § 7, 29 U.S.C.A. § 626(c).

More cases on this issue

[10]  Civil Rights    Motive or intent; pretext

In determination of whether employer's proffered reason for termination of employee is pretextual, in analysis of age-discrimination claim under ADEA, court's inquiry focuses on employee's conduct at the time he was terminated. Age Discrimination in Employment Act of 1967 § 7, 29 U.S.C.A. § 626(c).

2 Cases that cite this headnote

[11]  Civil Rights    Age discrimination

A subordinate's statements that reveal a supervisor's animus can be relevant evidence of age discrimination in violation of ADEA even if that subordinate has no personal input on the challenged decision. Age Discrimination in Employment Act of 1967 § 7, 29 U.S.C.A. § 626(c).

[12]  Civil Rights    Age discrimination

Employer's fair treatment of other employees in the same class is not conclusive evidence that the employer was free from animus, in an age-discrimination action under ADEA. Age Discrimination in Employment Act of 1967 § 7, 29 U.S.C.A. § 626(c).

1 Case that cites this headnote

[13]  Civil Rights    Age discrimination

A plaintiff alleging age discrimination in violation of ADEA need not show both pretext and some additional evidence of discrimination to permit the inference of unlawful intent; rather, an employer's dishonest explanation of a decision can, by itself, support an inference that its real reason was unlawful. Age Discrimination in Employment Act of 1967 § 7, 29 U.S.C.A. § 626(c).

1 Case that cites this headnote

 **\*688** Appeal from the United States District Court for the Northern District of Illinois, Eastern Division. No. 1:18-cv-08063 — [Robert W. Gettleman](), *Judge.*

**Attorneys and Law Firms**

[Luke DeGrand](), Attorney, DeGrand Law, P.C., Chicago, IL, for Plaintiff-Appellant.

[Danielle M. Kays](), Attorney, Seyfarth Shaw LLP, Chicago, IL, for Defendant-Appellee.

Before [Easterbrook](), [Jackson-Akiwumi](), and [Lee](), Circuit Judges.

**Opinion**

[Jackson-Akiwumi](), Circuit Judge.

 **\*689** Nicholas Vichio was a high-performing warehouse supervisor at US Foods, Inc. for over four years, until Charles Zadlo joined the company as the vice president of operations. Zadlo promptly placed Vichio on a performance improvement plan and terminated him within nine months. Vichio sued US Foods under the Age Discrimination in Employment Act, [29 U.S.C. § 626(c)](). The district court granted summary judgment for US Foods, finding that Vichio failed to show that the performance issues cited by US Foods were pretext for discrimination. Vichio appeals from that judgment.

We conclude Vichio presented sufficient evidence from which a reasonable jury could infer discrimination. We therefore reverse the district court's judgment and remand the case for further proceedings consistent with this opinion.

**I**

 **[1]** We construe the record in the light most favorable to Vichio as the non-movant on summary judgment. *[Dunlevy v. Langfelder](), [52 F.4th 349, 353 (7th Cir. 2022)]().* US Foods supplies and distributes food to restaurants and hotels. The company stores and packages its products at warehouses before shipping them to customers. Between March 2013 and October 2017, US Foods employed Vichio as a night warehouse supervisor in Bensenville, Illinois.

Vichio supervised "selectors" who prepared customer orders for shipping. Vichio reported to Mark Delhaye, the night warehouse manager, who in turn reported to Fred Hunter, the warehouse's director of operations. The warehouse's vice president of operations oversaw all warehouse employees.

In all but his final year at US Foods, Vichio received positive performance reviews. Mike Drayton, vice president of operations during this time, viewed Vichio as one of the best night supervisors at the Bensenville warehouse. Drayton heard from Hunter (the director of operations) and Delhaye (Vichio's direct manager) that they too saw Vichio as a top employee. The final performance review Vichio received during Drayton's term, issued in March 2016, was positive. Vichio's managers marked him as "exceeding expectations" in almost every category. Although Vichio rated himself as only "partially" meeting expectations in categories related to "employee development" and "personal excellence" (involving continued learning and self-motivation), his managers held a higher view of his work. They rated him as exceeding expectations in the first category and meeting expectations in the second category. The only blemish on Vichio's performance review was Hunter's comment that Vichio focused too much on completing jobs as quickly as possible, sometimes overlooked details, and made mistakes. But even then, Hunter concluded that Vichio was meeting the company's expectations.

Drayton left US Foods in November 2016. In December, Delhaye gave Vichio another positive performance review, rating him as "on target." But things changed **\*690** in January 2017, when US Foods hired Zadlo, age 37, to take over as vice president of operations at the warehouse. Less than a month after Zadlo's arrival, Vichio—54 years old at the time—received his first negative performance review. Delhaye marked Vichio as "developing" in several areas. Two days after this review, and only 25 days after joining the company, Zadlo placed Vichio on a performance improvement plan to "facilitate" Vichio leaving the company.

In June 2017, Delhaye gave Vichio a performance memorandum directing him to improve his conduct within 30 days. Delhaye prepared the memorandum from an outline he obtained from Zadlo. After receiving the performance memorandum, Vichio checked in daily with Delhaye to ensure that his job performance was meeting the company's expectations. Delhaye assured Vichio that Vichio was doing just fine. Despite this, at the end of the 30 days, US Foods placed Vichio on a performance improvement plan, along

with Robert Cline, the oldest night warehouse supervisor in Bensenville at age 61. Vichio and Cline's plans were not personalized; US Foods used identical language in both, even accusing both men of making the same comment that he was "waiting to be walked out."

Initially, Delhaye was responsible for administering both performance improvement plans. But Zadlo quickly became dissatisfied with Delhaye's pace and instructed Hunter to take over. This prompted Hunter to start documenting ways in which Vichio's performance was deficient. In one email Hunter sent to Zadlo shortly after assuming Vichio's discipline supervision, he noted Vichio had correctly ordered a selector to reassemble an incorrectly stacked pallet at the warehouse. After explaining that Vichio had performed his job correctly, Hunter told Zadlo, "So that would not be a good example." In the same email, Hunter said he would "get down stairs [sic] and see what [t]hese guys are not doing today."

Hunter prepared follow-up reviews of Vichio and Cline to mark 60 days on their performance improvement plans. Like the initial plans, the 60-day reviews for each employee were identical. This time, however, Zadlo asked Hunter to edit Cline's review so that it was not the same as Vichio's. Zadlo explained that Hunter needed to provide personalized and specific details about why the employees' performance was unsatisfactory, and asked Hunter to "please understand these have to be airtight."

While Vichio and Cline were on the performance improvement plans, US Foods hired an outside firm to recruit two new night warehouse supervisors. The recruiting company's agent, Nicole Harris, communicated with Zadlo on a weekly basis about his criteria for the positions. One candidate Harris discovered was approximately the same age as Vichio. In an email to Zadlo, Harris noted the candidate's good qualities included his mentality and experience with unions. But as a negative quality, Harris said that the candidate was "more on the seasoned side." Zadlo gave the candidate an interview but ultimately did not hire him.

US Foods terminated Vichio on October 26, 2017. Two months later, Zadlo selected a 43-year-old hire—11 years younger than Vichio—to replace Vichio as a night warehouse supervisor. Then, at the beginning of January 2018, Zadlo left US Foods. Cline's probation period under his performance improvement plan was set to expire during the same holiday weekend that Zadlo announced his resignation. Cline remained employed at US Foods and did not hear anything more about his performance improvement plan after Zadlo *691 left. He was never told that he successfully completed the plan.

Vichio sued US Foods alleging age discrimination under the Age Discrimination in Employment Act. US Foods moved for summary judgment, arguing Vichio was terminated for non-pretextual performance reasons. The district court granted the motion. On appeal, Vichio argues he provided sufficient evidence to survive summary judgment and present his case to a jury.

## II

[2] [3] [4] [5] [6] At summary judgment, we ask whether a reasonable jury could conclude Vichio's age was the cause of his termination. *Ortiz v. Werner Enters., Inc.*, 834 F.3d 760, 764 (7th Cir. 2016). In our circuit, plaintiffs can rely on two frameworks to show discrimination. Under the holistic approach established in *Ortiz*, we look at the evidence in the aggregate to determine whether it allows an inference of prohibited discrimination. 834 F.3d at 765. Under the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), a plaintiff must first establish a prima facie case for discrimination. This requires, in part, evidence that the plaintiff was meeting the employer's performance expectations. *Brooks v. Avancez*, 39 F.4th 424, 434 (7th Cir. 2022). The burden then shifts to the employer to present a "legitimate, non-discriminatory reason" for the employment decision. *Bless v. Cook Cnty. Sheriff's Off.*, 9 F.4th 565, 574 (7th Cir. 2021) (quoting *Formella v. Brennan*, 817 F.3d 503, 511 (7th Cir. 2016)). If the employer presents a legitimate reason, the burden shifts back to the employee to show the proffered reason is a pretext for discrimination. *Id.*; *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 515–16, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993). In other words, "[t]he defense bears the burden of articulating the justification, but the plaintiff bears the burden of showing that the justification is a pretext." *Sterlinski v. Catholic Bishop of Chicago*, 934 F.3d 568, 571 (7th Cir. 2019).

[7] [8] We may skip the *McDonnell Douglas* prima facie analysis if the employer raises the employee's performance as the reason for the adverse employment decision. *Bragg v. Munster Med. Rsch. Found. Inc.*, 58 F.4th 265, 271 (7th Cir. 2023). In such a case, issues of satisfactory performance and pretext overlap, allowing us to "proceed directly to ...

pretext." *Id.* (quoting *Everroad v. Scott Truck Sys., Inc.*, 604 F.3d 471, 477–78 (7th Cir. 2010)). "Pretext does not require that plausible facts presented by the defendant not be true, only that they not be the reason for the employment decision." *Hasham v. California State Bd. of Equalization*, 200 F.3d 1035, 1045 (7th Cir. 2000).

Vichio proceeds under both the *McDonnell Douglas* and *Ortiz* frameworks. Because US Foods has raised Vichio's performance as the reason for his termination, we need not consider Vichio's prima facie case under *McDonell Douglas* or conduct a separate analysis of the facts under the two frameworks. We answer the same question under either test: whether Vichio has presented sufficient evidence that would allow a reasonable jury to find that US Foods engaged in prohibited age discrimination. *Groves v. South Bend Cmty. Sch. Corp.*, 51 F.4th 766, 769–70 (7th Cir. 2022). The district court concluded that Vichio failed to do so. We disagree.

### III

**[9]** There is significant evidence in the record to support a reasonable inference that US Foods used Vichio's performance as pretext for discrimination. On summary **\*692** judgment, we interpret this evidence in the light most favorable to Vichio.

**[10]** To begin, Vichio's record at US Foods was virtually pristine until Zadlo arrived. As the district court acknowledged, Mike Drayton, the vice president of operations before Zadlo, considered Vichio an "exemplary worker." And Vichio's managers similarly saw him as a top employee. US Foods argues that we should disregard any positive feedback Vichio received from Drayton because an employee's ability to meet a former supervisor's expectations is not evidence that he was able to meet a later supervisor's expectations. As a general matter, US Foods is correct that our inquiry focuses on an employee's conduct at the time he was terminated. *Zayas v. Rockford Mem'l Hosp.*, 740 F.3d 1154, 1158 (7th Cir. 2014). But here, Drayton's view of Vichio's performance is relevant because Zadlo made quick work of Vichio's career at US Foods. We cannot ignore that Vichio received his first negative performance review less than a month after Zadlo's arrival and that Zadlo decided to "facilitate" Vichio's exit from US Foods within 25 days at the company.[1] All this even though Zadlo testified he was unsure whether he "could have started to form an opinion" about Vichio's performance within a month of arriving at US Foods.

Second, a reasonable jury could conclude that Zadlo's reasons for being dissatisfied with Vichio's performance within such a short time do not hold up to scrutiny. For example, Zadlo asserts he learned from Hunter that Vichio was one of the lower-performing employees in the warehouse. But Hunter testified that he could not recall discussing Vichio's job performance within the first 30 days of Zadlo's arrival at US Foods. Zadlo also places great emphasis on having a bad first impression of Vichio during their first meeting because Vichio said he would quit as soon as his son signed a Major League Baseball contract. Vichio denies making this comment—he testified that the two simply talked about their families and being baseball fans.

Third, though the initial performance memorandum purported to give Vichio an opportunity to improve within 30 days, Vichio's termination seemed to be predetermined. Zadlo immediately started looking for a night warehouse supervisor in Bensenville—a replacement hire.[2] Indeed, it did not matter that during this time that Vichio checked in daily with his immediate supervisor, Delhaye, about his performance and Delhaye reassured Vichio that he was meeting expectations. At the end of the 30 days, Zadlo still put Vichio on a performance improvement plan and said in no uncertain terms that the goal of the plan was to "facilitate" Vichio's "decision" to quit.

Fourth, Zadlo appeared to be the driving force behind concocting generalized negative feedback for Vichio. Zadlo provided **\*693** Delhaye with an outline of the initial performance memorandum which stated that although Vichio's team was completing enough work, Vichio needed to improve his attitude and focus more on the quality of his and his subordinates' work. Zadlo then had a direct hand in crafting the identical boilerplate improvement plans for Vichio and Cline. The plans faulted Vichio and Cline for failing to take "concrete steps" to help the warehouse meet its profit goals, but the profit goals were at least in part affected by *Zadlo's* decision to freeze "selector" hiring. The plans even attributed the same "waiting to be walked out" quote to both employees, yet US Foods cannot identify anyone who directly heard Vichio make this statement.[3]

Fifth, a jury could reasonably conclude that Zadlo was not content with simply putting Vichio on a performance improvement plan: he wanted to expedite Vichio's ultimate

termination and create a document trail in the process. Zadlo was dissatisfied that Delhaye was not administering Vichio's and Cline's performance improvement plans "fast enough" and appointed Hunter to take over the disciplinary process. An email from Hunter to Zadlo suggests that Zadlo asked Hunter to look for "good examples" to use against Vichio as grounds for termination, but that Hunter observed Vichio performing his duties as required by the job. And when Hunter prepared follow-up evaluations for Vichio and Cline that were once again identical, Zadlo told Hunter to revise them, explaining that "these have to be airtight."

Sixth, Vichio's immediate supervisors did not share Zadlo's purported concerns with Vichio's performance. Delhaye testified that he would not have put Vichio on the performance improvement plan.[4] And according to Vichio, both Delhaye and Hunter indicated their disagreement with Zadlo's decisions: Delhaye "almost had tears in his eyes" when he delivered the initial performance memorandum to Vichio, and Hunter said "Nick, this wasn't me" when escorting Vichio to his car after Vichio was fired.

[11] Lastly, Zadlo looked for and hired a younger employee to replace Vichio. Zadlo relied on Nicole Harris, a recruiting agent, to find suitable replacement candidates. In an email to Zadlo, Harris described a candidate who was about the same age as Vichio as "more on the seasoned side." Because Harris worked closely with Zadlo on finding Vichio's replacement hires and knew Zadlo's hiring criteria, her email reveals *Zadlo's* criteria for new hires—a preference against "seasoned" candidates. US Foods argues that descriptions of an employee's work experience are "not an inevitable euphemism for old age" and stray comments by non-decisionmakers are usually not indicative of the decisionmaker's animus. See *Skiba v. Illinois Cent. R.R. Co.*, 884 F.3d 708, 721–22 (7th Cir. 2018). That is generally true. But here, Harris emailed the decisionmaker to explain whether the candidate matched the hiring criteria and explicitly flagged the candidate's "seasoned" nature as a negative trait. In light of all the other evidence, a jury would be free to conclude that Harris was alluding to the candidate's age because she knew that Zadlo did not want to hire older employees. ***694** [5] After all, Zadlo did not hire the "seasoned" candidate and instead hired someone who was over 10 years younger than Vichio.[6]

[12] To be sure, there is evidence in the record that could lead a jury to conclude that Vichio's performance was indeed lacking. Take the fact that Cline retained his job while Vichio did not. A jury may see Cline as a counterexample to Vichio and find that Cline retained his job because he improved his performance under Zadlo's plan. Or it may accept Vichio's argument that Cline was next up for termination, saved only by Zadlo's sudden departure from the company. Similarly, US Foods did not target another night warehouse supervisor who was four years older than Vichio for termination. A jury could weigh the company's fair treatment of other employees in the same class, but such treatment is not conclusive evidence that the employer was free from animus. See *Furnco Const. Corp. v. Waters*, 438 U.S. 567, 580, 98 S.Ct. 2943, 57 L.Ed.2d 957 (1978). And consider the fact that the record shows Vichio was reprimanded for not ensuring selectors in the freezer area of the warehouse knew how to correctly stack pallets. A jury could agree with US Foods that this was indicative of Vichio's poor performance; or it could conclude that Vichio generally did not supervise the freezer (the evidence shows he was primarily responsible for the cooler, another area of the warehouse) and that Hunter, who disciplined Vichio for that incident, was under pressure from Zadlo to attribute mistakes to Vichio during this time. In sum, these examples may persuade the jury at trial, but they do not help US Foods on summary judgment because we must view the evidence in the light most favorable to Vichio.[7]

[13] In a final attempt to convince us that the district court correctly granted its summary judgment motion, US Foods argues that even if a jury could find that the company lied about its reasons for firing Vichio, he still he cannot show that the performance improvement plan was pretext for age discrimination. We recognize that "[s]ome of our opinions have been phrased in ways that suggest that a showing of pretext requires a plaintiff to show the employer's non-discriminatory reason was dishonest, and also to show that the employer's true reason was discriminatory." *Runkel v. City of Springfield*, 51 F.4th 736, 745 n.3 (7th Cir. 2022) (collecting cases). However, "[t]his language should not be interpreted to suggest that a plaintiff must show both pretext and some *additional* ***695** evidence of discrimination to permit the inference of unlawful intent." *Id.* (emphasis added). "[A]n employer's dishonest explanation of a decision can," by itself, "support an inference that its real reason was unlawful." *Joll v. Valparaiso Cmty. Schs.*, 953 F.3d 923, 932 (7th Cir. 2020); *see also St. Mary's Honor Ctr.*, 509 U.S. at 511, 113 S.Ct. 2742 (holding that a trier of fact may infer discrimination upon rejecting an employer's proffered reason for termination).

## IV

Summary judgment is appropriate only if no reasonable factfinder could conclude US Foods targeted Vichio for termination due to his age. But such a conclusion is possible given that Vichio presented significant evidence to establish an inference of discrimination, and the material facts relied on by US Foods to point in the opposite direction are disputed. We believe the parties' dispute is better suited for a jury.

REVERSED and REMANDED.

**All Citations**

88 F.4th 687

---

## Footnotes

1    US Foods claims Delhaye wrote this negative review before Zadlo arrived. That argument is not supported by evidence in the record. US Foods appears to be conflating the date of Vichio's "mid-year" review completed in December 2016, before Zadlo's arrival, with his "year-end" review completed in February 2017, after Zadlo's arrival. Moreover, Delhaye testified that he was not aware of any performance document created before Zadlo's arrival that suggested Vichio's performance was not meeting the company's expectations.

2    US Foods disputes that the job posting was meant to replace Vichio and claims that it merely wanted to add an additional supervisor to the warehouse. But the company's position is contradicted by an email from the warehouse's HR representative, who forwarded the job posting to the area president explaining that Vichio was on a performance improvement plan.

3    Vichio denies saying that he was "waiting to be walked out." However, he admits bragging to coworkers about his son's potential draft by a Major League Baseball team and commenting about retiring if his son succeeded.

4    US Foods argues Delhaye was not Vichio's supervisor at the time of Vichio's termination. An email from Delhaye to Zadlo in December 2017 indicates otherwise, and Zadlo testified that Delhaye was still the warehouse manager.

5    US Foods insists that because Harris is not a decisionmaker, her comments are relevant only if she had a "singular influence" over Zadlo and used that influence to manipulate his employment decisions. That is the standard for a "cat's paw" theory of discrimination not at issue in this case. *See Martino v. MCI Commc'ns Servs., Inc.*, 574 F.3d 447, 452 (7th Cir. 2009). A subordinate's statements that reveal a supervisor's animus can be relevant evidence of discrimination even if that subordinate has no personal input on the challenged decision. *Baines v. Walgreen Co.*, 863 F.3d 656, 663 (7th Cir. 2017).

6    Vichio argues that the district court improperly excluded Harris's comment from consideration. We do not read the district court's opinion that way. The court simply weighed the probative value of the email and concluded that, because Harris was not the final decisionmaker on hiring, her statement could not be attributed to Zadlo. However, as discussed above, we consider Harris's email sufficient evidence of the company's discriminatory intent.

7    The record also contains certain disputed evidence which we do not rely on. For instance, US Foods insists that Vichio admitted to not meeting the company's expectations, but Vichio disputed any assertion that he did not perform to the company's standards.

---

End of Document      © 2025 Thomson Reuters. No claim to original U.S. Government Works.

WESTLAW    © 2025 Thomson Reuters. No claim to original U.S. Government Works.      7